**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

SEAN DEREK WARREN,             )
                               )
            Petitioner,        )
                               )
      v.                       )     1:13CV72
                               )
KIERAN SHANAHAN,               )
                               )
            Respondent.        )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On April 6, 1995, a jury in the Superior Court of Guilford County found Petitioner guilty of first and second degree kidnapping and robbery with a dangerous weapon in cases 93 CRS 75130, 75131 and 75134. (Docket Entry 6, Ex. 4 at 10-11, 26-27; see also Docket Entry 2, ¶¶ 1, 2, 4-6.)[1] The trial court sentenced Petitioner to two consecutive terms of 40 years' imprisonment. (Docket Entry 6, Ex. 4 at 10-11, 26-27; see also Docket Entry 2, ¶ 3.) Petitioner filed a direct appeal (see Docket Entry 2, ¶¶ 8, 9(a) - (f)) and, on June 18, 1996, the North Carolina Court of Appeals found no error, State v. Warren, 122 N.C. App. 738, 471 S.E.2d 667 (1996).

Petitioner thereafter filed a pro se motion for appropriate relief ("MAR") with the state trial court, which he dated as signed on November 22, 2005 (Docket Entry 6, Ex. 2 at 8; see also Docket

---

[1] For attachments to Respondent's memorandum in support of his Motion to Dismiss, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

Entry 2 at 6-7),[2] and which the trial court accepted as filed on February 2, 2006 (Docket Entry 6, Ex. 2 at 2). The trial court summarily denied the MAR by order dated and filed September 7, 2006. (Docket Entry 6, Ex. 3; see also Docket Entry 2 at 7.)

Subsequently, Petitioner filed a second pro se MAR with the state trial court (Docket Entry 6, Ex. 4), which he dated as signed on August 5, 2009 (id. at 28), and which the trial court accepted as filed on August 14, 2009 (id. at 2). The trial court summarily denied that motion by order dated and filed September 18, 2009. (Docket Entry 6, Ex. 5.) Thereafter, Petitioner filed a pro se petition for certiorari with the North Carolina Court of Appeals (Docket Entry 6, Ex. 6), which he dated as submitted on October 30, 2009 (id. at 10), and which that court accepted as filed on December 3, 2009 (id. at 2). On December 10, 2009, the Court of Appeals denied that petition. (Docket Entry 6, Ex. 8.) Petitioner filed a second pro se certiorari petition with the Court of Appeals (Docket Entry 6, Ex. 9), which he dated as submitted on September 5, 2012 (id. at 6), and which that court accepted as filed on September 10, 2012 (id. at 2). On September 17, 2012, the Court of Appeals denied the second certiorari petition. (Docket Entry 6, Ex. 11.)

Petitioner thereafter submitted his instant Petition to this Court (Docket Entry 2), which he dated as mailed on January 22, 2013 (Docket Entry 2 at 14), and which the Court stamped as filed

---

[2] For attachments to the Petition, as well as portions of the Petition lacking paragraph numbers, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

on January 29, 2013 (Docket Entry 2 at 1).[3] Respondent then moved to dismiss the Petition on statute of limitation grounds. (Docket Entry 5.) Petitioner responded in opposition. (Docket Entry 8.) For the reasons that follow, the Court should grant Respondent's instant Motion.

### **Petitioner's Claims**

Petitioner raises two claims for relief in his Petition. First, he alleges that the state trial court imposed an "unauthorized" sentence for his first degree kidnapping conviction. (See Docket Entry 2 at 5.) Second, he claims entitlement to an "extremely more lenient" sentence for his kidnapping convictions under the North Carolina Structured Sentencing Act. (See id. at 6-7.)

### **Discussion**

In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 Petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[3] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court deems the instant Petition filed on January 22, 2013, the date Petitioner signed the Petition (under penalty of perjury) as submitted to prison authorities. (See Docket Entry 2 at 14.)

-3-

>   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).[4]

In Petitioner's response in opposition to Respondent's motion to dismiss, Petitioner argues that "the statute of limitations one-year period under section 28 U.S.C. § 2254 [sic] (d)(1) is inapplicable to Petitioner's claim because the claim and amended [sic] to law was not available until after the one year period had expired." (Docket Entry 8 at 3.)  Petitioner claims that "the law regarding his sentence was amended by the state of North Carolina . . . in 1998, 3 years after Petitioner was convicted." (Id.) (parentheses omitted).  Petitioner is essentially asserting that the statute of limitation contained in subparagraph (D) above applies, because he could not, even through the exercise of due diligence, have learned of the factual predicate of his claim,

---

[4] To the extent Petitioner challenges the constitutionality of Section 2254(d) (see Docket Entry 8 at 1), that contention fails. See, e.g., Wyzykowski v. Department of Corr., 226 F.3d 1213, 1217 (11th Cir. 2000) ("Every court which has addressed the issue - i.e., whether, as a general matter, § 2254(d) constitutes an unconstitutional suspension of the writ - has concluded that it does not.").

-4-

i.e., the change in the sentencing law, until its alleged enactment in "1998." (Id.)  Petitioner's argument falls short.

Even assuming Petitioner correctly contends that North Carolina's sentencing law changed in 1998,[5] the statute of limitation under subparagraph (D) would have started running at the time of enactment, see Wade v. Robinson, 327 F.3d 328, 333 (4th Cir. 2003) (holding that limitations period under § 2244(d)(1)(D) starts when inmate could have discovered factual predicate "through public sources"), and would have fully expired a year later in 1999.  As detailed above, Petitioner did not file any state or federal habeas petitions that would statutorily toll the running of the limitations period until 2006, years after the limitations period in question would have expired.  Thus, Petitioner's reliance on the limitations period provided by subparagraph (D) does not render his Petition timely.

Given that fact and the fact that subparagraphs (B) and (C) of § 2244(d)(1) do not apply in this case, the only other possible commencement point for Petitioner's one-year limitation period falls on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A).  As Respondent has

---

[5] Respondent points out that North Carolina's Structured Sentencing Act ("SSA"), which replaced the former Fair Sentencing Act ("FSA"), applied to offenses committed on or after October 1, 1994. (Docket Entry 6 at 7, citing N.C. Gen. Stat. § 15A-1340.10.)  Petitioner's kidnapping and robbery offenses occurred on November 29, 1993. (Docket Entry 6, Ex. 4 at 10-11, 26-27.)  Thus, through the exercise of due diligence, Petitioner should have known, as of the date of his convictions (April 6, 1995), that the former FSA rather than the SSA applied to his convictions.

asserted (Docket Entry 6 at 3), and Petitioner has not disputed (see Docket Entry 8), Petitioner's convictions became final on July 23, 1996, 35 days after the North Carolina Court of Appeals issued its June 18, 1996 opinion affirming Petitioner's convictions and sentences. See N.C. R. App. P. 32(b) (providing that, unless court orders otherwise, mandate issues 20 days after written opinion filed); N.C. R. App. P. 14(a) & 15(b) (allowing 15 days after issuance of mandate to file notice of appeal or petition for discretionary review); Saguilar v. Harkleroad, 348 F. Supp. 2d 595, 598-600 (M.D.N.C. 2004) (holding conviction final on direct review 35 days after Court of Appeals' opinion where no timely petition for Supreme Court discretionary review filed). The limitations period then ran for 365 days until it expired a year later on July 23, 1997, over 15 years before Petitioner brought this action under § 2254.

In the face of the foregoing time-line of events, Petitioner offers several reasons why he believes the Court should consider the Petition, notwithstanding the limits imposed by § 2254(d). (Docket Entry 2, ¶ 18.) In other words, the Petition requests equitable tolling, which doctrine the Supreme Court has ruled applicable in this context, Holland v. Florida, 560 U.S. 631, 649 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

First, Petitioner contends the Court should excuse his late filing due to "lack of . . . attorney representation and knowledge of the law after [his] appeal was denied." (Docket Entry 2, ¶ 18.) Petitioner further asserts that he "never spoke with or had a single visit from [his] appellate attorney(s) just a few letters [he] didn't understand at that time." (Id.) Petitioner appears to implicitly argue that equitable tolling applies because his appellate counsel failed to advise him of his right to file a state or federal habeas petition or of the one-year statute of limitations. The Court finds no merit to this argument.

As an initial matter, Petitioner identified Roe v. Flores-Ortega, 528 U.S. 470 (2000), as purported authority for the proposition that appellate counsel has an obligation to advise a defendant of post-conviction options other than direct appeal. In fact, Roe holds only "that [trial] counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe, 528 U.S. at 480. Roe does not impose on appellate attorneys any obligation to advise their clients about post-conviction remedies.

Even if Petitioner's appellate counsel had borne a duty to advise Petitioner about post-conviction remedies and failed to satisfy it in this case, Petitioner's argument still misses the mark. Simple negligence does not warrant equitable tolling. See

Holland, 560 U.S. at 651-52; see also Hutchinson v. Florida, 677 F.3d 1097, 1100 (11th Cir. 2012) ("If attorney miscalculation, error, or negligence were enough for equitable tolling, the § 2244(d) statute of limitations would be tolled to the brink of extinction . . . ."). "[T]o rise to the level necessary to constitute an 'extraordinary circumstance,' . . . attorney negligence must be so egregious as to amount to an effective abandonment of the attorney-client relationship." Rivas v. Fischer, 687 F.3d 514, 538 (2d Cir. 2012); see also Maples v. Thomas, 565 U.S. ___, ___ - ___ & n.7, 132 S. Ct. 912, 922-27 & n.7 (2012) (holding that attorneys' abandonment of petitioner constituted cause to overcome procedural default and remarking that distinction between attorney negligence and attorney abandonment should apply equally in equitable tolling context). Petitioner has not alleged facts establishing such abandonment.[6]

Second, Petitioner claims entitlement to equitable tolling because he lacked "attorney representation" during his post-conviction period, lacked "knowledge of the law," had "no access to a law library or legal materials," and remained "incarcerated inside the North Carolina Department of Public Safety." (Docket Entry 2, ¶ 18; see also Docket Entry 8 at 2 (giving as one of the

---

[6] Petitioner's vague allegations that he "never spoke with or had a single visit from [his] appeals attorney(s) just a few letters [he] didn't understand at that time" (Docket Entry 2, ¶ 18) do not suffice as a showing of attorney abandonment warranting equitable tolling, particularly where Petitioner makes no claim (and the record does not reveal) that his appellate attorneys failed to pursue his direct appeal. See, e.g., Hutchinson, 677 F.3d at 1099 ("[T]he allegations supporting equitable tolling must be specific and not conclusory."); Smith v. Virginia, No. 3:12CV148, 2013 WL 871519, at *4 (E.D. Va. Mar. 8, 2013) (unpublished) ("[C]onclusory allegations fail to meet the high burden required to demonstrate entitlement to equitable tolling.").

-8-

"Reasons" the Court should deny Respondent's instant Motion the fact that "Petitioner is a prisoner of the State of North Carolina . . . [who] is indigent, a lay person at law and its procedure without any means of obtaining counsel, legal materials, knowledge, etc."). In these regards, Petitioner essentially argues that the Court should excuse him from complying with the one-year statute of limitations because he lacked familiarity with post-conviction remedies. However, unfamiliarity with the legal process, even in the case of an unrepresented prisoner, does not constitute grounds for equitable tolling. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); March v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999); see also Gray v. Lewis, No. 1:11CV91, 2011 WL 4022787, at *3 (M.D.N.C. Sept. 9, 2011) (unpublished) (concluding that lack of prison libraries and delay in receipt of support from North Carolina Prisoner Legal Services did not warrant equitable tolling) (citing Hood v. Jackson, No. 5:10-HC2008-FL, 2010 WL 4974550, at *2 (E.D.N.C. Dec. 1, 2010) (unpublished), and Dockery v. Beck, No. 1:02CV00070, 2002 WL 32813704, at *2 (M.D.N.C. Aug. 1, 2002) (Beaty, J., adopting recommendation of Eliason, M.J.) (unpublished)), adopted, slip op. (M.D.N.C. Nov. 4, 2011) (Beaty, C.J.)).

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 5) be granted, that the Petition (Docket Entry 2) be dismissed, and that this action be dismissed.


                                    /s/ L. Patrick Auld
                                   **L. Patrick Auld**
                             **United States Magistrate Judge**

March 26, 2014